803 F.2d 616
 15 Collier Bankr.Cas.2d 1281, Bankr. L. Rep. P 71,504
In re NATIONAL DEVELOPERS, INC., Debtors.
NATIONAL DEVELOPERS, INC., a corporation, et al., Plaintiffs-Appellees,
v.
CIBA-GEIGY CORPORATION, a corporation; Delvan Development
Corporation, a corporation, et al., Defendants-Appellants.
 No. 85-7481.
 United States Court of Appeals,
Eleventh Circuit.
 Oct. 30, 1986.
 
 Thomas A. Butler, Butler, Fitzgerald & Potter, New York City, Susan A. Glover, Reams, Wood, Vollmer, Killion & Brooks, P.C., James D. Brooks, Mobile, Ala., for defendants-appellants.
 John B. Crawley, Troy, Ala., George Azar, Montgomery, Ala., Robert H. Ford, Huntsville, Ala., for plaintiffs-appellees.
 Appeal from the United States District Court for the Middle District of Alabama.
 Before TJOFLAT and ANDERSON, Circuit Judges, and MORGAN, Senior Circuit Judge.
 TJOFLAT, Circuit Judge:
 
 I.
 
 1
 In the mid-1970's, appellee National Developers, Inc. (NDI) began making plans for the construction of a plant in McIntosh, Alabama to manufacture anhydrous ammonia. In furtherance of these plans, NDI entered into a contract with appellant Delvan Development Corporation (Delvan) on September 25, 1975; Delvan agreed to supply NDI with natural gas for the operation of the proposed plant. On the same date, NDI entered into a contract with appellant Ciba-Geigy Corporation (Ciba), in which Ciba agreed to purchase from NDI the anhydrous ammonia produced at the plant. Three lawsuits resulted from alleged breaches of these contracts. The first lawsuit (the New York action) was brought by NDI against Ciba and Delvan in the Supreme Court of New York in 1977. NDI's two-count complaint alleged (1) that Delvan had breached its obligation to supply natural gas to NDI and (2) that Ciba had tortiously interfered with NDI's contract with Delvan by preventing Delvan from delivering the gas to NDI.
 
 
 2
 Two years after the New York action commenced, NDI brought an identical action in the Circuit Court of Barbour County, Alabama (the Barbour County action). Ciba and Delvan immediately moved the New York court to enjoin NDI from prosecuting its Barbour County action. Their motion was granted on June 13, 1979.
 
 
 3
 On February 25, 1981, NDI filed a petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Alabama. In conjunction with this bankruptcy proceeding, NDI commenced an adversary proceeding in the bankruptcy court, asserting breach of contract claims against Ciba and Delvan similar to the claims it was making in the New York and Barbour County actions. NDI thereafter moved the bankruptcy court to stay the New York action, and its motion was denied.
 
 
 4
 On June 11, 1982, the New York action was set for trial on July 20, 1982. Three days later, on June 14, NDI moved the court in the Barbour County action to enjoin Ciba and Delvan from proceeding to trial in New York. Before the court could rule on NDI's motion, however, Ciba and Delvan removed the Barbour County action to the bankruptcy court. At the same time, Ciba and Delvan moved the New York court for an order to show cause why NDI, its president, and its attorneys should not be held in contempt for violating that court's injunction prohibiting NDI from prosecuting the Barbour County action. The court never addressed this motion, because on July 16, 1982, four days before the trial of the New York action was to begin, NDI filed a petition in the bankruptcy court removing the New York action to that court. Shortly thereafter, NDI moved the bankruptcy court to consolidate the two cases that had been removed to the court--the New York action and the Barbour County action--with the adversary proceeding then pending before the court. In response, Ciba and Delvan moved the bankruptcy court to remand the New York action to the Supreme Court of New York.
 
 
 5
 Subsequently, the three cases pending before the bankruptcy court--the New York action, the Barbour County action, and the adversary proceeding--were transferred to the United States District Court for the Middle District of Alabama pursuant to the Emergency Bankruptcy Rule adopted by that court on December 23, 1982.[1] On May 6, 1983, the district judge referred the three actions to the bankruptcy court to "hear all pretrial motions and submit recommendations to the Court." After hearing argument, the bankruptcy court filed a "memorandum opinion" recommending that the district court grant NDI's motion to consolidate the three actions and deny the motion by Ciba and Delvan to remand the New York action.[2] On June 18, 1985, the district court adopted the bankruptcy court's recommendation and entered an order consolidating the three actions and denying the motion to remand. Appellants appealed, contending that the district court should have remanded the New York action because it had been removed to a bankruptcy court that had no subject matter jurisdiction to entertain it.
 
 II.
 
 6
 Before addressing appellants' claim of error, we must determine whether we have appellate jurisdiction to review the district court's order. Appellee contends that 28 U.S.C. Sec. 1478(b) (1982)[3] bars appellate review of a decision not to remand a claim removed to a bankruptcy court; section 1478(b) states that an order denying a motion for remand under the section "is not reviewable by appeal or otherwise." Appellants contend that this statutory bar to review is not applicable in a case in which the claim sought to be remanded was not removed pursuant to the procedure outlined in 28 U.S.C. Sec. 1478(a) (1982). Section 1478(a) permits a party to remove a civil action "to the bankruptcy court for the district where such civil action is pending."[4] The New York action was pending in the territory covered by the Southern District of New York; appellants contend that NDI had the right to remove it to the bankruptcy court in that district, not to the bankruptcy court for the Middle District of Alabama. When NDI removed it to the latter court, appellants argue, NDI failed to follow the procedure outlined in section 1478(a), i.e., NDI removed it to a court without subject matter jurisdiction.
 
 
 7
 Appellants' interpretation of section 1478(b) has been accepted by the Fifth Circuit in Browning v. Navarro, 743 F.2d 1069, 1076 n. 21 (5th Cir.1984): "[n]onreviewability extends only to the discretionary decision to remand or not to remand a properly removed action, not to whether the bankruptcy court originally had jurisdiction over the matter." (Emphasis added.) See also Pacor, Inc. v. Higgins, 743 F.2d 984, 993 & n. 14 (3d Cir.1984). We agree with the reasoning in these opinions and hold that section 1478(b) does not bar our review of appellants' claim.
 
 
 8
 This holding does not end our jurisdictional inquiry, however, because we must also determine whether the district court's order denying remand is reviewable prior to final adjudication of the New York action in the district court. Appellants admit that the district court's order was not "final" within the meaning of 28 U.S.C. Sec. 1291 (1982), but contend that the order is reviewable under the collateral order doctrine established in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). We need not explore the complex issue of the doctrine's applicability in this situation, because we find merit in appellants' alternative argument that their appeal should be treated as a petition for a writ of mandamus. The writ of mandamus is an "extraordinary remedy" justified only when "exceptional circumstances amounting to a judicial 'usurpation of power' " are present. Will v. United States, 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967) (quoting De Beers Consol. Mines, Ltd. v. United States, 325 U.S. 212, 217, 65 S.Ct. 1130, 1132 (1945)). Federal courts have traditionally used the writ "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." Roche v. Evaporated Milk Association, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943) (citations omitted). As the discussion below indicates, we believe that the district court acted outside its jurisdiction when it failed to remand the New York action to thestate court. Thus, we conclude that mandamus review of the merits of appellants' claim is appropriate under the facts of this case.
 
 
 9
 As we have stated, section 1478(a) allowed NDI to remove the New York action to the Bankruptcy Court for the Southern District of New York. If NDI wished to have that action litigated in the Bankruptcy Court for the Middle District of Alabama, it should have removed the action to the bankruptcy court in New York and thereafter moved that court to transfer the action to the Middle District of Alabama pursuant to 28 U.S.C. Sec. 1475 (1982). See In re Nova Real Estate Investment Trust, 10 B.R. 90 (S.D.Fla.1981) (debtor filed an application for removal to the bankruptcy court in the Southern District of Florida and a motion to transfer the case to the Bankruptcy Court for the Eastern District of Virginia, in which Chapter 11 proceedings were being held). NDI elected not to follow this procedure and instead attempted to remove the New York action directly to the bankruptcy court in the Middle District of Alabama. While it may be true that allowing direct removal of state actions to the bankruptcy court conducting Chapter 11 proceedings would be a more efficient procedure than is the mechanism for removal outlined in 28 U.S.C. Sec. 1478(a), we are obligated to enforce the procedures selected by the Congress. We conclude that the Bankruptcy Court for the Middle District of Alabama had no jurisdiction over the removed New York action; therefore, the district court erred in denying appellants' motion to remand.[5] Accordingly, the district court's order is vacated, and the case is remanded to the district court so that it can remand the New York action to the Supreme Court of New York.
 
 
 10
 VACATED and REMANDED.
 
 
 
 [1]
 On June 28, 1982, the United States Supreme Court decided Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (plurality), which held unconstitutional the delegation of Article III judicial power to bankruptcy courts contained in Sec. 241(a) of the Bankruptcy Act of 1978 (codified as 28 U.S.C. Sec. 1471 (1982)). The Court stayed the effect of the decision until December 24, 1982. Prior to the lifting of the stay, the Judicial Conference of the United States submitted to the judicial councils of the circuits a proposed interim rule of procedure, dubbed the Emergency Bankruptcy Rule, which established procedures for adjudicating bankruptcy cases pending action by Congress. Subsequently, each judicial council directed the district courts within the circuit to adopt the proposed rule. See In re Committee of Unsecured Creditors of F S Communications Corp., 760 F.2d 1194, 1198 (11th Cir.1985); White Motor Corp. v. Citibank, N.A., 704 F.2d 254, 261-62 (6th Cir.1983). The proposed rule was adopted by the District Court for the Middle District of Alabama on December 23, 1982
 
 
 [2]
 We refer to the bankruptcy court's memorandum opinion as a recommendation despite the fact that the memorandum opinion was accompanied by an "order" from the bankruptcy court denying the motion to remand and granting the motion to consolidate. Under the Emergency Bankruptcy Rule, the bankruptcy court had no jurisdiction to formulate orders and, therefore, the memorandum opinion and order issued by the bankruptcy court must be considered a recommendation. The existence of the bankruptcy court order presents no problem in this case, because the district court correctly treated the memorandum opinion and order as a recommendation
 
 
 [3]
 28 U.S.C. Sec. 1478 (1982) provided:
 Sec. 1478. Removal to the bankruptcy courts
 (a) A party may remove any claim or cause of action in a civil action, other than a proceeding before the United States Tax Court or a civil action by a Government unit to enforce such governmental unit's police or regulatory power, to the bankruptcy court for the district where such civil action is pending, if the bankruptcy courts have jurisdiction over such claim or cause of action.
 (b) The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order under this subsection remanding a claim or cause of action, or a decision not so remanding, is not reviewable by appeal or otherwise.
 Following the Supreme Court's decision in Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (plurality), Congress passed the 1984 Bankruptcy Amendments. As part of that legislation, Sec. 1478 was amended, changing references to "the bankruptcy court" into references to the "district court," and the section was reenacted as 28 U.S.C. Sec. 1452 (Supp. II 1984).
 
 
 [4]
 For the complete text of 28 U.S.C. Sec. 1478(a) (1982), see supra note 3
 
 
 [5]
 In their brief, appellants argue that when NDI attempted to remove the New York action to the bankruptcy court pursuant to 28 U.S.C. Sec. 1478(a) (1982), the Supreme Court's decision in Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (plurality), had been issued. They argue that the Northern Pipeline decision barred the removal of state law claims to the bankruptcy courts and that the Supreme Court's six month stay of the Northern Pipeline decision did not permit actions to be removed to the bankruptcy courts after the date of the opinion. They argue, therefore, that because NDI filed its removal petition in a court that had no jurisdiction, the district court should have remanded the New York action. While this argument may have merit, we need not address it to decide this appeal